JOURNAL ENTRY AND OPINION
{¶ 1} Melvin Tolliver appeals following his jury conviction on charges of aggravated burglary, kidnapping and rape. He claims that prosecutorial misconduct deprived him of a fair trial and that his conviction was against the manifest weight of the evidence. We affirm.
 {¶ 2} The record reveals that fifteen-year-old M.H.[1]
lived with her mother in a duplex in the city of Euclid. M.H.'s mother would leave for work early each morning, as was her routine, and M.H. would leave her bed and go to the living room couch where she would sleep until her friends came in the house to wake her.
 {¶ 3} At the end of June 2004, M.H. was asleep on her couch when she awoke to find her friend, "Rommel," standing above her, naked from the waist down, and pulling down her sweat pants. Rommel removed her sweat pants and underwear, held her hands above her head and vaginally raped her. M.H. tried to resist and attempted to free herself, but was unable to do so. Rommel told her that "this will last forever" and that if she told anyone what he had done, he would tell them that she "wanted it."
 {¶ 4} After the rape, Rommel left the house and M.H. ran to the bathroom to shower for an extended period of time because she felt "dirty." When M.H.'s mother returned from work, out of fear, M.H. did not tell her what had happened.
 {¶ 5} Approximately two weeks after the incident, M.H. confided in her friend, who then persuaded M.H. to tell her mother. Her mother told M.H. that there was no need to involve the police and that she would personally handle it. M.H.'s mother then arranged a meeting with Tolliver and armed herself with a knife. During the meeting, Tolliver warned her not to use the knife because he had a gun. The meeting ended without incident, and M.H.'s mother returned home.
 {¶ 6} In July, 2004, M.H.'s mother took her to the doctor for unrelated medical issues, and M.H. then told her doctor that she had been raped. The doctor contacted a social worker who then informed the police.
 {¶ 7} Patricia Altiere is an intake sex abuse social worker with the Cuyahoga County Department of Children and Family Services. Altiere interviewed M.H. who told her that she was raped by Rommel Tolliver but could not tell her the exact date of the rape.
 {¶ 8} Shortly after telling Ms. Altiere what happened, M.H. also told her juvenile probation officer, Steven Schubert, about the incident. Officer Schubert spoke with both M.H. and her mother and was told that the perpetrator's name was "Rommel" and that his last name was either "Tolliver" or "Pryor." Officer Schubert then searched the police database and determined that the proper name was "Melvin Tolliver," and that he was 38 years old, not 22, as M.H. and her mother had been told. Tr. 172-173. The case was then turned over to Detective Joseph Rodriguez of the Euclid Police Department.
 {¶ 9} Detective Rodriguez interviewed M.H., her mother, and two of M.H.'s friends. He then reviewed the report of CCDCFS. Tolliver was then taken into custody and charged.
 {¶ 10} In September 2004, Tolliver was indicted on one count of aggravated burglary, in violation of R.C. 2911.11; one count of kidnapping, in violation of R.C. 2905.01, which additionally carried a sexual motivation specification under R.C. 2941.147; one count of rape, in violation of R.C. 2907.01, and one count of intimidation, in violation of R.C. 2921.04.
 {¶ 11} The case proceeded to trial, and, following a Crim.R. 29 motion, the court dismissed the fourth count of intimidation and the case proceeded on the remaining three charges. The jury found Tolliver guilty on all counts, including the sexual motivation specification, and sentencing was scheduled.
 {¶ 12} At sentencing, the trial court imposed a five-year sentence on each charge, all counts to run concurrent, and imposed a five-year period of post-release control. Tolliver was also adjudicated a sexually oriented offender and ordered to register as such for ten years. Tolliver appeals from this conviction and sentence in the assignments of error set forth in the appendix to this opinion.
I. PROSECUTORIAL MISCONDUCT
 {¶ 13} In his first assignment of error, Tolliver asserts that he was deprived of a fair trial because of prosecutorial misconduct in three instances: the prosecutor's reference to his post-arrest silence, the prosecutor's questioning of a police officer which elicited testimony that the officer learned Tolliver's name through computer research, and the prosecutor's questioning of an alibi witnesses' alcohol-related convictions.
 {¶ 14} The standard of review for prosecutorial misconduct is whether the comments and questions by the prosecution were improper, and, if so, whether they prejudiced appellant's substantial rights. State v. Treesh, 90 Ohio St.3d 460, 480, 2001-Ohio-4. Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record. Statev. Lott (1990), 51 Ohio St.3d 160, 166. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" State v. Gapen, 104 Ohio St.3d 358,2004-Ohio-6548, at paragraph 92, quoting Smith v. Phillips
(1982), 455 U.S. 209, 219.
 {¶ 15} Tolliver first contends that the following exchange with the prosecutor and Detective Rodriguez improperly referred to his post-arrest silence, and cites to the following exchange:
"Q: Do you know, if you, at anytime, had any contact withMelvin Tolliver?
 A: Yes.
 Q: Where did that take place at?
 A: That took place at the police station.
 Q: Was Mr. Tolliver in custody, at that time?
 A: Yes.
 Q: Did you advise Melvin Tolliver of his constitutionalrights?
 A: Yes.
 Q: Did you advise Melvin Tolliver that he had a right to makea statement?
 A: Yes." Tr. 184-185.
 {¶ 16} Since Tolliver failed to object to the testimony about which he now complains, he has waived all but plain error. Statev. Slagle (1992), 65 Ohio St.3d 597. "Plain error does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise." State v. Moreland
(1990), 50 Ohio St.3d 58.
 {¶ 17} As this court recognized in State v. Correa (May 15, 1997), Cuyahoga App. No. 70744, quoting State v. Sabbah (1982),13 Ohio App.3d 124, "the Miranda decision precludes the substantive use of a defendant's silence during police interrogation to prove his guilt." However, as the Ohio Supreme Court has recognized, "where evidence has been improperly admitted in derogation of a criminal defendant's constitutional rights, the admission is harmless `beyond a reasonable doubt' if the remaining evidence alone comprises `overwhelming' proof of defendant's guilt." State v. Williams (1983), 6 Ohio St.3d 281, citing Harrington v. California (1969), 395 U.S. 250, 254.
 {¶ 18} In determining whether the prosecutor's conduct and admission of the post-arrest silence evidence was harmless, this court must consider the extent of the comments, whether an inference of guilt from silence was stressed to the jury, and the extent of other evidence suggesting the defendant's guilt. Statev. Thomas, Hamilton App. No. C-010724, 2002-Ohio-7333. A review of the testimony indicates that the detective never testified as to whether or not Tolliver did or did not make a statement to police. The questioning stops far short of eliciting any testimony regarding post-arrest silence. Therefore, based on the limited questioning of Detective Rodriguez and the lack of evidence as to Tolliver's post-arrest silence, we find that this portion of Tolliver's first assignment of error lacks merit.
 {¶ 19} Tolliver next claims that the prosecutor's questioning of Detective Rodriguez impermissibly elicited testimony that he discovered Tolliver's name through research on the police computer, implying that he had a past criminal record. Tolliver cites to the following portion of the transcript:
Q: Did you learn the name of the alleged perpetrator of[M.H.'s] complaint?
 A: It was — it was difficult, but we were able to finally getthe corrected name, yes.
 Q: What do you mean by it was difficult?
 A: When [M.H.] told me the name, and [her mother] told me thename, they said the name was Rommel, and they didn't know if thelast name was Pryor or Tolliver. So when we went through thecomputer at the police station, I mean, I will say ourdispatchers worked pretty hard to finally come up with thecorrect name, that his name was actually Melvin Tolliver.
Tr. 172.
 {¶ 20} Tolliver maintains that by conducting this exchange, the prosecutor insinuated to the jury that Tolliver had a criminal history, and cites to Evid.R. 404, entitled "Character Evidence Not Admittible to Prove Conduct; Exceptions; Other Crimes," for support. Again, since Tolliver failed to object to this testimony, he has waived all but plain error. Slagle,
supra.
 {¶ 21} In State v. Bankston (Mar. 11, 1982), Cuyahoga App. No. 43772, this court was presented with a similar situation where the testifying officer stated that after receiving the defendants name, he ran a records check and later learned that there was a photograph of that defendant in a nearby district. The officer testified that he obtained the photograph and matched it with existing department photos and then arranged to have the witness view the display. After appealing this testimony on grounds that it prejudiced his case, this court held that, "the mere mention that a records check was made and photographs with dates, of the defendant were obtained from the Richmond Heights police station did not necessarily provide the jury with the inference of prior criminal activity." In the instant case, both M.H. and her mother testified that they knew Melvin Tolliver as "Rommel." Tr. 48, 87-88. Further, Tolliver's girlfriend, Melanie Jones, also testified that Tolliver's nickname was "Rommel." Tr. 198. We therefore find that there was ample testimony presented at trial to support any allegation that Melvin Tolliver was also known as "Rommel." We further find that the officer's testimony that he searched a computer database, which contains more than simply criminal history records, does not amount to the type of prosecutorial misconduct that warrants reversal.
 {¶ 22} For these reasons, this portion of Tolliver's first assignment of error lacks merit.
 {¶ 23} In his final allegation of prosecutorial misconduct, Tolliver asserts that the prosecutor's questioning of his alibi witness, Melanie Jones, on her prior alcohol-related convictions constituted reversible error. Tolliver cites to the following exchange:
BY MS. SKUTNIK:
 "Q: Miss Jones, do you have a problem with alcohol?
 MR. RAMSEY: Objection.
 A: No.
 THE COURT: The answer, ma'am?
 A: No, ma'am.
 BY MS. SKUTNIK:
 Q: You don't feel that you have a problem with alcohol?
 A: No.
 Q: You haven't been drinking today, have you?
 A: No.
 Q: You would at least agree that you've suffered a number ofdifficulties in your life as a result of your alcoholism,wouldn't you?
 A: Yes.
 Q: But it's not a problem for you?
 A: No.
 MS. SKUTNIK: Thank you. May I have a moment, Judge?
 BY MS. SKUTNIK:
 Q: Miss Jones, your testimony is, that you do not have — youfeel that you do not have an issue or that alcohol is not anissue for you?
 MR. RAMSEY: Objection.
 THE COURT: I believe she indicated that it wasn't a problem.
 BY MS. SKUTNIK:
 Q: Ma'am, isn't it true that you have been convicted of amultitude of alcohol-related offenses?
 MR. RAMSEY: Objection.
 MR. DINTAMAN: Objection.
 THE COURT: Sustained."
Tr. 216-217.
 {¶ 24} Ms. Jones testified that she was Tolliver's girlfriend, and that while he did not live with her, he was with her all the time. Tr. 195. She testified that she would leave at approximately 9:00 a.m. to take her children to daycare and would return shortly thereafter. She would then leave the house for work around 10:45 a.m. and either her father, or Tolliver himself, would drive her to work. Tr. 195-197. The aggregate of her testimony, based on M.H.'s inability to provide a specific date of the incident, was to state that Tolliver was with Ms. Jones within the time frame of the incident.
 {¶ 25} During cross-examination, it appears that the State attempted to impeach Ms. Jones' recollection by bringing up her past alcohol abuse. In line with this questioning, Tolliver contends that other than the Evid.R. 609 exception for certain criminal convictions of a witness, credibility may not be impeached by extrinsic proof of specific instances of conduct.State v. Kamel (1984), 12 Ohio St.3d 306. The State concedes that it was improper for the prosecutor to inquire as to Ms. Jones' alcohol-related misdemeanor convictions, but submits that the trial court's handling of the error, including giving a curative instruction to the jury on this issue, rendered the error harmless. We agree.
 {¶ 26} When the prosecutor attempted to elicit testimony regarding Ms. Jones' past convictions for alcohol-related offenses, the trial court sustained the objection and the prosecutor ended the line of questioning. In addition to sustaining the objection, the trial court gave a curative instruction to the jury, which Tolliver acknowledges. The trial court instructed the jury that:
"One final matter, there was some cross-examination last nightof a defense witness.
 You are instructed that any discussions in any question thatwas put to that witness that was sustained or what the answer toany question that was put to her might have been, you are not tospeculate on, and to disregard."
Tr. 226.
 {¶ 27} A jury is presumed to follow the judge's instructions.State v. Loza, 71 Ohio St.3d 61, 1994-Ohio-409. After receiving any precautionary, curative instructions from the trial court, the jury was within its province to determine whose version of events it found more credible, either M.H.'s or Ms. Jones' accounts. Based on the trial court's actions and coupled with the fact that determinations of witness' credibility are left within the discretion of the jury, we find that this final portion of Tolliver's first assignment of error lacks merit.
II. MANIFEST WEIGHT
 {¶ 28} In his final assignment of error, Tolliver contends that his conviction was against the manifest weight of the evidence, and that the record lacked proper support to warrant his conviction on all three charges.
 {¶ 29} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of thegreater amount of credible evidence offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on itseffect in inducing belief.' Id. at 387, quoting Black's LawDictionary (6 ED. 1990) 1594." * * * `The court, reviewing theentire record, weighs the evidence and all reasonable inferences,considers the credibility of witnesses and determines whether inresolving conflicts in the evidence, the jury clearly lost itsway and created such a manifest miscarriage of justice that theconviction must be reversed and a new trial ordered. Thediscretionary power to grant a new trial should be exercised onlyin the exceptional case in which the evidence weighs heavilyagainst the conviction.'" Thompkins, at 387. (Internalcitations omitted.)
 {¶ 30} However, this court should be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt. State v. DeHass (1967),10 Ohio St.2d 230, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." State v. Lindsey, 87 Ohio St.3d 479,483, 2000-Ohio-465.
 {¶ 31} At trial, the jury heard the testimony of then fifteen-year-old M.H. She testified that between June 21st and June 30th, she was asleep on her living room couch when she awoke to Tolliver standing over her, naked from the waist down and pulling down her sweat pants. Tr. 94-96. M.H. told Tolliver to stop, tried to pull her pants up, and squirmed around on the couch in an attempt to move away. Tr. 97. Tolliver then placed his body on top of hers, held her hands above her head so she couldn't move them, and positioned her leg to allow him to penetrate her. Tr. 98. M.H. repeatedly and tearfully told him to stop, to which his only response was "[t]his will last forever." Tr. 99. Tolliver then told her that if she told anyone what he had done, he would tell them that she wanted it. Tr. 100.
 {¶ 32} After the incident, Tolliver left and M.H. ran to the shower because she felt physically and emotionally dirty. Tr. 104. She testified that she thought about calling the police, but was scared that no one would believe her. Tr. 105. M.H. also testified that she didn't want to tell her mother about the incident because her mother had a previous relationship with Tolliver. Tr. 106.
 {¶ 33} A little over a week later, M.H. told her friend, A, about the incident, and A persuaded her to tell her mother. Tr. 109-110. M.H.'s mother also testified that when she leaves for work in the morning, she locks the door because no one is allowed in the home when she is away. Tr. 44. She then testified that after learning of the incident, she became enraged, got in her car and drove to "Rommel's" house. Tr. 53-54. After discovering that no one was home, she returned to speak with her daughter, but decided not to take her to the doctor's to be examined due to the passage of time and the lack of DNA evidence. Tr. 55.
 {¶ 34} Based on this testimony, Tolliver was convicted by the jury on one count each of: aggravated burglary, kidnapping and rape. R.C. 2911.11 defines aggravated burglary in pertinent part as:
"(A) No person, by force, stealth, or deception, shalltrespass in an occupied structure or in a separately secured orseparately occupied portion of an occupied structure, whenanother person other than an accomplice of the offender ispresent, with purpose to commit in the structure or in theseparately secured or separately occupied portion of thestructure any criminal offense, if any of the following apply: (1)The offender inflicts, or attempts or threatens to inflictphysical harm on another; (2) The offender has a deadly weapon ordangerous ordnance on or about the offender's person or under theoffender's control."
 {¶ 35} R.C. 2905.01 defines kidnapping in pertinent part as:
"(A) No person, by force, threat, or deception, or, in thecase of a victim under the age of thirteen or mentallyincompetent, by any means, shall remove another from the placewhere the other person is found or restrain the liberty of theother person, for any of the following purposes: * * *
 "(4) To engage in sexual activity, as defined in section2907.01 of the Revised Code, with the victim against the victim'swill."
 {¶ 36} Finally, R.C. 2907.02 defines rape in pertinent part as:
"(A) (1) No person shall engage in sexual conduct with anotherwho is not the spouse of the offender or who is the spouse of theoffender but is living separate and apart from the offender, whenany of the following applies: (a) For the purpose of preventingresistance, the offender substantially impairs the other person'sjudgment or control by administering any drug, intoxicant, orcontrolled substance to the other person surreptitiously or byforce, threat of force, or deception. (b) The other person is lessthan thirteen years of age, whether or not the offender knows theage of the other person. (c) The other person's ability to resistor consent is substantially impaired because of a mental orphysical condition or because of advanced age, and the offenderknows or has reasonable cause to believe that the other person'sability to resist or consent is substantially impaired because ofa mental or physical condition or because of advanced age. (2) Noperson shall engage in sexual conduct with another when theoffender purposely compels the other person to submit by force orthreat of force."
 {¶ 37} Based on the testimony presented at trial, the jury convicted Tolliver on all charges, including the sexual motivation specification. Since the credibility of witnesses is for the jury to determine, from our vantage point and examining the record of that testimony, we cannot say that the victim's testimony was unbelievable, or that the jury lost its way in determining Tolliver's guilt. Although the defense placed great emphasis on the lack of any physical evidence, the absence of physical evidence was not dispositive. State v. Paramore (Sept. 19, 1997), 1st Dist. No. C-960799. Therefore, we cannot say that Tolliver's conviction was against the manifest weight of the evidence.
 {¶ 38} Tolliver's second assignment of error lacks merit.
 {¶ 39} The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze Jr., P.J., And Gallagher, J., Concur
 ASSIGNMENTS OF ERROR "I. PROSECUTORIAL MISCONDUCT UNFAIRLY PREJUDICED THEAPPELLANT'S CONSTITUTIONAL RIGHT TO A FAIR TRIAL.
 A. THE PROSECUTOR'S QUESTIONING OF THE INVESTIGATING DETECTIVEWAS AN IMPERMISSIBLE COMMENT ON APPELLANT'S POST-ARREST SILENCE.
 B. THE PROSECUTOR'S QUESTIONING OF A POLICE OFFICER WHICHELICITED THAT APPELLANT'S CORRECT NAME WAS ARRIVED AT THROUGHRESEARCH ON THE POLICE COMPUTER WAS AN IMPROPER IMPEACHMENT OFDEFENDANT'S GENERAL CHARACTER AND DEPRIVED HIM A FAIR TRIAL.
 C. PROSECUTOR'S IMPROPER QUESTIONING OF APPELLANT'S ALIBIWITNESS REGARDING PRIOR ALCOHOL-RELATED OFFENSES, WHICH WERENEITHER FELONIES NOR INVOLVED DISHONESTY UNFAIRLY PREJUDICEDAPPELLANT [SIC] RIGHT TO A FAIR TRIAL.
 II. THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THEEVIDENCE."
[1] This court protects the identity of all parties to a juvenile case.